Robert STRONG and Richard Neisius, Plaintiffs-
Respondents,

v.

C.I.R., INC., Defendant,

GEORGE W. OLSEN CONSTRUCTION CO., INC. and Tran-
samerica Insurance Company, Defendants-
Appellants-Petitioners.

Supreme Court

*No. 92–2901. Oral argument May 24, 1944.—Decided June 15,
1994.*

(Also reported in 516 N.W.2d 719.)

620

For the defendants-appellants-petitioners there were briefs by *Catherine R. Quiggle* and *Rodli, Beskar & Boles, S.C.,* River Falls and oral argument by *Catherine R. Quiggle.*

For the plaintiffs-respondents there was a brief by *William J. Radosevich,* Hudson and oral argument by *William J. Radosevich.*

HEFFERNAN, CHIEF JUSTICE. This is a review of a published decision[1] of the court of appeals which affirmed a summary judgment of the circuit court for St. Croix county, C.A. Richards, Judge, awarding double the wage deficiency, court costs, and attorneys fees to Robert Strong, Richard Neisius, and other employes of Subcontractor C.I.R. against the prime contractor, George W. Olsen Construction Company (G.W.O.), and its surety, Transamerica Insurance Company.

We reverse that portion of the decision which affirmed the circuit court award of double wages and attorney fees and costs. We let stand the decision in respect to the award to Strong and Neisius and to all other employes who later consented to be named in the action for the difference between the prevailing wage specified in the contract and the lesser amount paid to each worker by the subcontractor, C.I.R.

Section 66.293, Stats.,[2] requires Wisconsin municipalities' construction contracts to provide that all workers be paid at least the prevailing wage in the area for their particular skills. Section 779.14, Stats.,[3] requires that all municipal contracts in excess of $500 "contain a provision for payment by the prime contractor of all claims for labor performed . . . in making the public improvement or performing the public work."

---

[1] *Strong and Neisius v. C.I.R., Inc.,* 179 Wis. 2d 440, 507 N.W.2d 159 (1993).

[2] Appendix A sets forth sec. 66.293, Stats.

[3] Appendix B sets forth sec. 779.14, Stats.

Section 779.14(1m)(a). It further provides that the prime contractor supply a bond issued by a surety licensed to do business in Wisconsin conditioned on the "faithful performance of the contract" (sec. 779.14(1m)(b)2.a.) and "[t]he payment to every person, including every subcontractor or supplier, of all claims that are entitled to payment for labor performed" (sec. 779.14(1m)(b)2.b.).

G.W.O. was awarded the contract with the City of River Falls for the construction of a public works building. It gave bond for the contract performance issued by Transamerica Insurance Co. G.W.O. subcontracted with C.I.R. for plumbing and heating work.

The construction contract was completed on July 28, 1990. On April 15, 1991, Strong and Neisius, employes of the subcontractor, C.I.R., filed an action in their names and "on behalf of all other . . . employes who are similarly situated" against C.I.R., G.W.O., and G.W.O.'s surety. It was alleged, and is not disputed, that all C.I.R. employes were underpaid. The employes claimed they were entitled to double the deficiency in their pay measured by the prevailing wage and reasonable attorney fees and costs as provided in sec. 66.293(3)(a):

> Any contractor, subcontractor or agent thereof, who fails to pay the prevailing rate of wages determined by the department under this subsection or pays less than 1½ times the hourly basic rate of pay for hours worked on the project in excess of the prevailing hours determined under this subsection, shall be liable to the employes affected in the amount of their unpaid minimum wages or their unpaid overtime compensation and an additional equal amount as liquidated damages. . . . The court shall, in addition to any judgment awarded to the

plaintiff, allow a reasonable attorney's fee and costs to be paid by the defendant.

The employes, plaintiffs, also relied upon sec. 779.14, Stats., the bond statute, particularly on the portion of sec. 779.14(2)(a), which provides that any "party in interest," including a "subcontractor or supplier," which by definition in sec. 779.14(1)(a) means those on the project who contract for the performance of labor, may maintain an action against the prime contractor and its surety upon the bond for "any damages" sustained (sec. 779.14(2)(a)).

It is clear and undisputed that, under sec. 779.14 and the contract itself, G.W.O. and its surety are the guarantors of the payment of the prevailing wage to all workers at the site of the project whether employed by a subcontractor or the prime contractor. G.W.O. and Transamerica acknowledge that they are liable to workers for the difference between the wage actually paid and the prevailing wage. They deny, however, that the Wisconsin statute subjects them to any of the penalties claimed by the plaintiffs—the doubling of the wage deficiency and the payment of the plaintiffs', if reasonable, attorney fees and costs.

G.W.O. and Transamerica also assert that, while an action was timely brought under the provision of sec. 779.14(2)(a) which allows a "party in interest," concededly a wage earner, to "maintain an action in that party's name against the prime contractor and the sureties," only Strong and Neisius were named parties. G.W.O. and Transamerica contend that the action brought on behalf of all C.I.R. employes "similarly situated" were not parties until some time after the express one-year period of limitations set forth in sec. 779.14(2)(a) had run. Hence, it is asserted that these

later identified employes are barred from maintaining the action.

G.W.O. and its surety also look to sec. 669.293(3)(a), Stats., which, without stating a period of limitation, permits an action by one or more employes for and on "behalf of that employe . . . and other employes similarly situated" for unpaid "minimum" wages, overtime compensation, and an "additional equal amount as liquidated damages." That same statute, however, also provides that no employe shall be a party plaintiff unless that employe consents in writing to be a party plaintiff and files that consent in the court where the action is brought.

G.W.O. and Transamerica point out that, although it is admitted that consents were filed by 19 workers, "similarly situated," all those consents were filed more than one year after the completion of the contract. The defendants, "harmonizing" the provisions of the prevailing wage statute (sec. 693.293) with the contract and bond statute (sec. 779.14), argue that the one-year period of limitations of sec. 779.14 applies and that consequently all of the employes who filed consents more than one year after the completion of the basic contract are barred from the action.[4]

The action was decided by the trial court on the basis of reciprocal motions for summary judgment under the provisions of sec. 802.08, Stats. The material and undisputed facts relied upon by the parties are those set forth in the discussion above. While some

---

[4] It should be noted that, under sec. 109.09, Stats., the provisions of sec. 66.293 may be administratively enforced by the Department of Industry, Labor and Human Relations if a wage claim is filed no later than two years after the wage is due. Section 893.44 establishes a general period of limitations for actions for compensation for personal services within two years.

peripheral questions of fact have been raised, they are not relevant to the determination of the legal issues posed on this review.

The circuit court granted the motion for summary judgment of plaintiffs, Robert Strong, Richard Neisius, and other C.I.R. employes, against C.I.R., G.W.O., and Transamerica in the amount double the difference between the wages paid by C.I.R. and the mandatory prevailing wage plus attorney fees and costs.[5]

In so holding it also determined that the action had been commenced timely by all of the plaintiffs, those named initially and those "similarly situated" who were named by filing consents before trial but more than one year after the completion of the contract.

Upon appeal the judgment of the circuit court was affirmed. Petition for review of the decision was accepted in respect to both aspects of the court of appeals decision.

On this review, consistent with their position throughout this litigation, G.W.O. and Transamerica recognize their statutory and contractual responsibility to pay the deficiency in the wages paid to Strong and Neisius, who asserted their claim by bringing an action within one year after the completion of the contract. They acquiesce to the judgment for payment of the deficiency and interest on the deficiency to those named plaintiffs.

The following questions remain for this court to decide as a matter of law:

---

[5] During the circuit court proceedings an answer was filed on behalf of C.I.R. stating that it was defunct and had no assets. This asserted status is not questioned. Hence, it is acknowledged that, as a practical matter, C.I.R. cannot respond to the claims of the plaintiffs.

Are the prime contractor, G.W.O., and Transamerica, its surety, liable for the doubled amount of the deficiency as liquidated damages and for reasonable attorney fees and costs? To this we answer, "No."

Are the employes "similarly situated" who were not initially named in the complaint but filed a consent before trial but more than one year following the completion of the contract entitled to recover in the same manner as the named plaintiffs, Strong and Neisius? To this we answer, "Yes."

We discuss these issues in turn.

The liability for double wage deficiency as liquidated damages, attorney fees and costs, if such liability there be, is imposed by sec. 66.293(3)(a), Stats. We conclude that the opening sentence of this subsection defines which of the contracting parties may be subject to such liability. Under that clearly stated statutory condition of liability, only the direct employer, in this case C.I.R., is subject to the penal aspects of the prevailing wage law. That threshold sentence recites that "[a]ny contractor, subcontractor or agent thereof, *who fails to pay* the prevailing rate of wages . . . shall be liable to the employes" for their unpaid wages and for "an additional equal amount as liquidated damages." (Emphasis supplied.)

We look to the plain meaning of a statute if it is unambiguous. *National Amusement Co. v. Department of Revenue,* 41 Wis. 2d 261, 163 N.W.2d 625 (1969); *Honeywell, Inc. v. Aetna Casualty & Surety Co.,* 52 Wis. 2d 425, 190 N.W.2d 499 (1971). We conclude that this initial sentence is free of ambiguity.

The statute imposes liability only on those in the contractual hierarchy *who have failed to pay* the prevailing rate of pay. On the basis of the undisputed

627

facts, it was not G.W.O. nor Transamerica who failed to pay the prevailing wage to the employes when those payments were due. It was C.I.R. True, the principal contractor is not free of liability, for sec. 779.14(1m) imposes responsibility on the contractor for labor performed "in making the public improvement or performing the public work," and the bond executed as required provides for the same payment. However, sec. 779.14(1m)(a) is silent in respect to any penalties to be imposed on any parties other than those who fail to pay the prevailing rate. Penalties imposed for past failed performance are set forth only in sec. 66.293(3)(a). The plaintiffs here, however, argue that sec. 779.14(1m)(a) provides for recovery of "damages" by reason of the contractor's failure and for the failure of a subcontractor of the prime contractor or of the subcontractor of the prime contractor "for the performance of labor." Plaintiffs also point out sec. 66.293 refers to liquidated "damages." Thus in an attempt to harmonize the two statutes plaintiffs leap to the conclusion that the responsibility for "damages" in sec. 66.293 is to be equated with the term, "damages," as used in referring to sec. 779.14(2)(a). We see no such equivalency, for, on the face of the statute, responsibility for damages as mentioned in sec. 66.293(3)(a) is personal to the person or entity in the contractual hierarchy who in fact fails to pay the prevailing wage. That person was not G.W.O. nor its surety.

Although we believe it to be clear from the face of the statute that G.W.O. is not the offending party, were we to resort to canons of construction, any ambiguity in respect to a penal statute must be resolved against imposing penalty provisions. Unless the legislature

628

has made it absolutely clear against whom penalties lie, penal provisions should not be applied.

We conclude that the statute imposes liability for damages, i.e., doubling the deficiency, and attorney fees and costs only upon C.I.R. and not upon G.W.O., who, under the facts here, is responsible only for payment, plus interest, of the difference between what the employes received from C.I.R. and what they should have received.[6]

The question remaining is whether the employes "similarly situated" who were unnamed until consents required in sec. 66.293, were filed with the court prior to trial but more than one year after completion of the contract can recover in the same manner as the named plaintiffs, Strong and Neisius.

Although we have concluded herein that plaintiffs could recover liquidated damages, attorney fees and costs only against C.I.R., the employer who failed to pay, the question nevertheless is whether those persons who were not initially identified as party plaintiffs upon being name and identified, could recover in the same manner as Strong and Neisius.

We conclude that the relationship between secs. 66.293, 779.14, and the rules of civil procedure permit

---

[6] Peripherally, in oral argument it was asserted that perhaps G.W.O. did not act in good faith, e.g., the "affidavits" submitted by C.I.R. as evidence of compliance with the prevailing wage requirement were in fact not affidavits, for they were not executed under oath. However, a careful examination of the record on summary judgment reveals no objection to the affidavits on that basis. Under the circumstances here, where both parties have moved for summary judgment, we rely on the undisputed facts as recited by both parties.

the later identified plaintiffs to recover exactly as Strong and Neisius.

Section 66.293(3)(a), Stats., provides that there can be an action to recover for the amount of the unpaid minimum wage "by any one or more employes for and in behalf of that employe or those employes *and other employes similarly situated.*" (Emphasis supplied.)

Section 779.14(2)(a), Stats., provides, not later than one year after the completion of work under the contract any party in interest, (see 779.14(1)(a)) may maintain an action in that party's name against the prime contractor for failure of a subcontractor to pay the prevailing wage (sec. 779.14(2)(a) 1 and 2).

Thus, it is reasonable to conclude, as did the court of appeals, that, when secs. 66.293(3)(a) and 779.14(2)(a) are considered together, an action may be brought by an employe in his or her own behalf and also in a representative capacity for other employes. Considering the close relationship of the subject matter—the performance of public works contracts under sec. 779.14 and the payment of prevailing wages in public works contracts under sec. 66.293—it is reasonable for the court of appeals to conclude that the period of limitations, under these statutes, is one year.[7]

The principal action was brought by Strong and Neisius within that period, and by express pleading the action was stated to be on behalf of other C.I.R. employes similarly situated, all of whom Strong and Neisius alleged were paid at less than the prevailing wage.

---

[7] See footnote 4, supra, re other periods of limitation for actions for wages and in respect to administrative relief by the Department of Industry, Labor and Human Relations.

■

We conclude the provision in sec. 66.293(3)(a), Stats., that requires written consent filed in the court for any person, other than the named party plaintiff, to become a party plaintiff is irrelevant to the commencement of the action here. The provision is primarily for the protection of persons who may not wish to be identified as parties with the concomitant obligation to pay costs or face the consequences of a counterclaim. The provision should be interpreted as a shield to protect employes and not as a device to prevent employes who originally are identified only as "similarly situated" to be excluded from recovering the wages due on the ground that they are barred by a period of limitations.

We conclude the statute means what it says. They cannot be identified as "party plaintiffs" without a consent properly filed. It should be noted it is only required that the action be begun within a year. Clearly, that was done in this case. It is equally clear that consent was filed before the case went to trial. Additionally, the defendants knew from the allegations of the complaint that all C.I.R. employes were underpaid. When, prior to trial the consents were filed, defendants knew precisely who those employes were.

■

We conclude that, under the provisions of sec. 66.293, Stats., bringing the action by named employes on behalf of other employes similarly situated made the claimants in this case plaintiffs from the outset, although the ministerial function of self-identification by consent of those additional parties was a prerequisite to their ability to take judgment against the defendants and to be the beneficiaries of the action.

We conclude that, under sec. 66.293(3)(a), Stats., where the statute provides the equivalent of a class action and the members of the class identify themselves prior to trial, there is no necessity to employ the doctrine of relation back to amend the pleadings or to join parties. We hold that, under the provisions of secs. 779.14 and 66.293, where an action is commenced by named parties and for and in behalf of other employes similarly situated prior to the running of limitations, those other employes under the particular statutes here may, with their consent, be named as party plaintiffs at any time prior to trial if it appears that to do so will not prejudice the defendants by failure to give notice of the nature of the claim and the approximate magnitude of the damages sought.

We do not fault the analysis of the court of appeals which, by reference to appropriate liberalizing provisions of the Wisconsin Code of Civil Procedure, justified the right of the additional employes to benefit from the judgment.

The court of appeals relied on:

> sec. 803.05 (third-party practice), sec. 803.07 (interpleader); sec. 803.09 (intervention); sec. 803.10 (substitution of parties), Stats. Further, the code generally provides that amendments to the pleadings shall be freely given at any stage of the action when justice so requires. Section 802.09(1), Stats. Amendments to pleadings may also be made to conform to the evidence, and failure to formally amend does not affect the result of the trial. Section 802.09(2), Stats. Amendments relating to claims that arose out of the transaction set forth in the original pleading relate back to the filing of the original pleading. Section 802.09(3), Stats.

We conclude, however, that the right to add beneficiary plaintiffs under secs. 779.14(2)(a) and 66.293(3)(a), Stats., is made even more manifest than would be dictated by liberal construction of the pleading statutes. Sections 779.14(2)(a) and 66.293(3)(a) make it apparent that it is the intent of the legislature that the action is in the nature of a class action to which members of the class may be added at any time not likely to prejudice the adverse party. The procedure statutes relied upon by the court of appeals demonstrate that, to allow the plaintiffs who identify themselves by filing a consent to participate in the judgment, is consistent with the liberal construction to be accorded the rules of civil procedure.

The action was timely brought on behalf of the employes "similarly situated," and, when those employes were identified by their filed consent prior to trial, they were properly included in the judgment.

*By the Court.*—Decision affirmed in part and reversed in part.

BABLITCH, J., took no part.

## APPENDIX A

**66.293 Contractor's failure to comply with municipal wage scale. (1)** Every city, village, town, county, school board, school district, sewer district, drainage district, commission, public or quasi-public corporation or any other governmental unit, which proposes the making of a contract for any highway, street or bridge construction, shall determine the rate of wage scale which shall be paid by the contractor to the employes upon the project. Reference to such rate of wage scale shall be published in the notice issued for the purpose of securing bids for the project. Whenever any contract

for a highway, street or bridge construction is entered into, the rate of wage scale shall be incorporated in and made a part of such contract. All employes working upon the highway, street or bridge construction shall be paid by the contractor in accordance with the rate of wage scale incorporated in the contract. Such rate of wage scale shall not be altered during the time that the contract is in force.

(2) Whenever any city, town, village or county, school board, school district, sewer district, drainage district, commission, public or quasi-public corporation or any governmental unit, by ordinance, resolution, rule or bylaw, establishes a rate of wage scale to be paid to employes upon any highway, street or bridge construction by a contractor and it is found upon due proof that the contractor is not paying or has failed to pay the wage scale established or is directly or indirectly, by a system of rebates or otherwise, violating the ordinance, rule, resolution or bylaw of the city, town, village or county, school board, school district, sewer district, drainage district, commission, public or quasi-public corporation or any governmental unit, the contractor may be fined not to exceed $500 for each offense. The failure to pay the required wage to an employe for any one week or part thereof constitutes a separate offense.

(3) Every municipality, before making a contract by direct negotiation or soliciting bids on a contract, for any project of public works except highway, street or bridge construction, shall apply to the department of industry, labor and human relations to ascertain the prevailing wage rate, hours of labor and hourly basic pay rates in all trades and occupations required in the work contemplated. The department shall determine the prevailing wage rate, hours of labor and hourly basic pay rates for

each trade or occupation under s. 103.49, make its determination within 30 days after receiving the request and file the same with the municipality applying therefor. A request for the review of a wage determination may be made within 30 days from the determination date if evidence is submitted with the request showing that the wage rate or hours of labor for any given trade or occupation included in the determination does not represent the prevailing wage rate or hours of labor for that trade or occupation in the area. Such evidence shall include wage rate and hours of labor information for the contested trade or occupation on at least one similar project located in the municipality where the proposed project is located and on which some work has been performed during the current or any of the previous 12 months. The department shall affirm or modify the original determination within 15 days from the date on which the department receives the request for review. Reference to such prevailing wage rates and hours of labor determined by the department or a municipality exempted under par. (d) shall be published in the notice issued for the purpose of securing bids for the project. If any contract for a project of public works except highway, street or bridge construction is entered into, the wage rates and hours determined by the department or exempted municipality shall be incorporated into and made a part of the contract. No laborer, worker or mechanic employed directly upon the site of the project by the contractor or by a subcontractor, agent or other person, doing or contracting to do any part of the work, may be paid less than the prevailing wage rate in the same or most similar trade or occupation; nor may he or she be permitted to work a greater number of hours per day or per calendar week than the prevailing hours of labor determined under this subsection,

unless he or she is paid for all hours in excess of the prevailing hours at a rate of at least 1½ times his or her hourly basic rate of pay.

(a)   Any contractor, subcontractor or agent thereof, who fails to pay the prevailing rate of wages determined by the department under this subsection or pays less than 1½ times the hourly basic rate of pay for hours worked on the project in excess of the prevailing hours determined under this subsection, shall be liable to the employes affected in the amount of their unpaid minimum wages or their unpaid overtime compensation and an additional equal amount as liquidated damages. Action to recover the liability may be maintained in any court of competent jurisdiction by any one or more employes for and in behalf of that employe or those employes and other employes similarly situated. No employe shall be a party plaintiff to any such action unless the employe consents in writing to become such a party and the consent is filed in the court in which the action is brought. The court shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee and costs to be paid by the defendant.

(b)   In this subsection, "municipality" means any city, town, village or county, vocational, technical and adult education district, common school district, union high school district, unified school district, county-city hospital established under s. 66.47, sewerage commission organized under s. 144.07(4), metropolitan sewerage district organized under ss. 66.20 to 66.26, public or quasi-public corporation, or any other unit of government, or any agency or instrumentality of 2 or more units of government in this state.

(c)   This subsection does not apply to any highway, street or bridge construction or to any public works project for which the estimated project cost of

completion is below $3,500 where a single trade is involved and $35,000 where more than one trade is involved on such project (after hearing these dollar amounts shall be adjusted by the department every 2 years, the first adjustment to be made not sooner than January 1, 1976. The adjustments shall be in proportion to any changes in construction costs since the effective date of the dollar amounts established under this subsection immediately prior to each adjustment); nor does this subsection apply to wage rates and hours of employment of laborers, workmen or mechanics engaged in the processing or manufacture of materials or products or to the delivery thereof by or. for commercial establishments which have a fixed place of business from which they regularly supply such processed or manufactured materials or products, except that this subsection does apply to laborers, workmen or mechanics delivering mineral aggregate such as sand, gravel or stone which is incorporated into the work under the contract by depositing the material substantially in place, directly or through spreaders, from the transporting vehicle.

(d) The department of industry, labor and human relations, upon petition of any municipality, shall issue an order exempting the municipality from applying to the department for a determination under this subsection when it is shown that an ordinance or other enactment of the municipality sets forth the standards, policy, procedure and practice resulting in standards as high or higher than those under s. 103.49.

(e) Each contractor, subcontractor or agent thereof participating in a project covered by this subsection shall keep full and accurate records clearly indicating the name and trade or occupation of every laborer, workman or mechanic employed by the contractor, subcontractor or agent in connection

637

with the project and an accurate record of the number of hours worked by each employe and the actual wages paid therefor.

(f) For the information of the employes working on the project, the wage rates and hours determined by the department or exempted municipality and the provisions of pars. (a) and (e) shall be kept posted by the employer in at least one conspicuous and easily accessible place at the site of the project.

(g) Each agent or subcontractor shall furnish the contractor with evidence of compliance with this subsection.

(h) Upon completion of the project and prior to final payment therefor, each contractor shall file with the municipality an affidavit stating that the contractor has complied fully with the provisions and requirements of this subsection and that the contractor has received evidence of compliance from each of the contractor's agents and subcontractors. No municipality may authorize final payment until such an affidavit is filed in proper form and order.

(i) The department of industry, labor and human relations or the contracting municipality may demand and examine copies of any payrolls and other records and information relating to the wages paid laborers, workmen or mechanics on work to which this subsection applies. The department may inspect records in the manner provided in ch. 101. Every contractor, subcontractor or agent is subject to the requirements of ch. 101 relating to examination of records.

(j) When the department of industry, labor and human relations finds that a municipality has not requested a prevailing wage rate determination or has not incorporated a prevailing wage rate determination into the contract as required under this subsection, the department shall notify the

638

municipality of such noncompliance and shall file the prevailing wage rate determination with the municipality within 30 days after such notice.

(k)   The provisions of s. 101.02(5)(f), (12), (13) and (14) apply to this subsection. Section 111.322(2m) applies to discharge or other discriminatory acts arising in connection with any proceeding under this subsection, including proceedings under par. (a).

(m)   If requested by any person, the department shall inspect the payroll records of the contractors, subcontractors or agents to ensure compliance with this section. The cost of the inspection shall be paid by the person making the request, if the contractor, subcontractor, or agent subject to the inspection is found to be in compliance.

(n)   1. Except as provided under subds. 2 and 3, the department of industry, labor and human relations shall notify any municipality applying for a determination under sub. (3) (intro.) and any municipality exempted under par. (d) of the names of all persons whom the department has found to have failed to pay the prevailing wage rate determined under this subsection or has found to have paid less than 1.5 times the hourly basic rate of pay for hours worked on a project in excess of the prevailing hours of labor determined under this subsection at any time in the preceding 3 years. The department shall include with any such name the address of such person and shall specify when and how such person has failed to pay the prevailing wage rate determined under this subsection and when and how such person has failed to pay less than 1.5 times the hourly basic rate of pay for hours worked on a project in excess of the prevailing hours of labor determined under this subsection. No municipality may award any contract to such person unless otherwise recommended by the

639

department or unless at least 3 years have elapsed from the date the department issued its findings or the date of final determination by a court of competent jurisdiction, whichever is later.

2. The department may not include in a notification under subd. 1 the name of any person on the basis of having let work to a person whom the department has found to have failed to pay the prevailing wage rate determined under this subsection or has found to have paid less than 1.5 times the hourly basic rate of pay for hours worked on a project in excess of the prevailing hours of labor determined under this subsection.

3. This paragraph does not apply to any contractor, subcontractor or agent who in good faith commits a minor violation of this section, as determined on a case-by-case basis through administrative hearings with all rights to due process afforded to all parties or who has not exhausted or waived all appeals.

4. Any person submitting a bid on a project subject to this section shall be required, on the date the person submits the bid, to identify any construction business in which the person, or a shareholder, officer or partner of the person, if the person is a business, owns, or has owned at least a 25% interest on the date the person submits the bid or at any other time within 3 years preceding the date the person submits the bid, if the business has been found to have failed to pay the prevailing wage rate determined under this subsection or to have paid less than 1.5 times the hourly basic rate of pay for hours worked on a project in excess of the prevailing hours of labor determined under this subsection.

5. The department shall promulgate rules to administer this paragraph.

**History:** 1971 c.154, 307; 1973 c.181; 1977 c.29; 1985 a.159; 1989 a.56. 228: 1991 a.316. This

section is inapplicable to private corporation contracting for medical center. 61 Atty. Gen. 426.

See note to 66.521, citing 63 Atty. Gen. 145.

Municipalities are subject to (3) on contracts for any project of public works, even if done by the turnkey method. 64 Atty. Gen. 100.

## APPENDIX  B

**779.14  Public works, form of contract, bond, remedy.  (1)** In this section, "subcontractor or supplier" means the following:

(a)   Any person who has a direct contractual relationship, expressed or implied, with the prime contractor or with any subcontractor of the prime contractor to perform labor or furnish materials, except as provided in par. (b).

(b)   With respect to contracts entered into under s. 84.06(2) for highway improvements, any person who has a direct contractual relationship, expressed or implied, with the prime contractor to perform labor or furnish materials.

**(1m)**(a)   All contracts with the state involving $2,500 or more and all other contracts involving $500 or more for the performance of labor or furnishing materials when the same pertains to any public improvement or public work shall contain a provision for the payment by the prime contractor of all claims for labor performed and materials furnished, used or consumed in making the public improvement or performing the public work, including, without limitation because of enumeration, fuel, lumber, building materials, machinery, vehicles, tractors, equipment, fixtures, apparatus, tools, appliances, supplies, electric energy, gasoline, motor oil, lubricating oil, greases, state imposed taxes, premiums for worker's compensation insurance and contributions for unemployment compensation.

641

(b)1. A contract under par. (a) shall not be made unless the prime contractor gives a bond issued by a surety company licensed to do business in this state. The department of natural resources for contracts under s. 23.41, the department of administration for other state contracts, and the public board or body authorized to enter into such contracts for all other contracts under par. (a), may waive the requirement that contractors furnish bonds if guarantees or warranties deemed adequate by the department of natural resources, department of administration or public board or body are provided for by the contract.

2. The bond shall carry a penalty of not less than the contract price, and shall be conditioned for all of the following:

a. The faithful performance of the contract.

b. The payment to every person, including every subcontractor or supplier, of all claims that are entitled to payment for labor performed and materials furnished for the purpose of making the public improvement or performing the public work as provided in the contract and this subsection.

3. The bond shall be approved for the state by the state official authorized to enter the contract, for a county by its district attorney, for a city by its mayor, for a village by its president, for a town by its chairperson, for a school district by its president and for any other public board or body by the presiding officer thereof.

4. No assignment, modification or change of the contract, change in the work covered thereby or extension of time for the completion of the contract may release the sureties on the bond.

5. Neither the invitation for bids nor the person having power to approve the prime contractor's bond may require that the bond be furnished by a

specified surety company or through a specified agent or broker.

**(2)**(a)   Not later than one year after the completion of work under the contract, any party in interest, including any subcontractor or supplier, may maintain an action in that party's name against the prime contractor and the sureties upon the bond for the recovery of any damages sustained by reason of any of the following:

1.   Failure of the prime contractor to comply with the contract.

2.   Except as provided in subd. 3, failure of the prime contractor or a subcontractor of the prime contractor to comply with a contract, whether express or implied, with a subcontractor or supplier for the performance of labor or furnishing of materials for the purpose of making the public improvement or performing the public work that is the subject of the contract under sub. (1m).

3.   With respect to contracts entered into under s. 84.06(2) for highway improvements, failure of the prime contractor to comply with a contract, whether express or implied, with a subcontractor or supplier of the prime contractor for the performance of labor or furnishing of materials for the purpose of making the highway improvement that is the subject of the contract under sub. (1m).

(b)   If the amount realized on the bond is insufficient to satisfy all claims of the parties in full, it shall be distributed among the parties proportionally.

**(3)**   In an action by a county upon the bond all persons for whose protection it was given and who make claim thereunder may be joined in the action. The county highway commissioner may take assignments of all demands and claims for labor or material and enforce the same in the action for the benefit of the assignors, and the judgment may pro-

vide the manner in which the assignors shall be paid.

**History:** 1973 c. 90; 1975 c. 147 s. 54; 1975 c. 224; 1977 c. 418; 1979 c. 32 s. 57; 1979 c. 110 s. 60(12); 1979 c. 176; Stats. 1979 s. 779.14; 1985 a. 225; 1987 a. 399; 1989 a. 31, 290.

A subcontractor can maintain an action against the prime contractor and his surety if it is brought within one year after completion of work on the principal contract. Honeywell, Inc. v. Aetna Casualty & Surety Co. 52 W (2d) 425, 190 NW (2d) 499.

See note to 779.01, citing Jas. W. Thomas Const. Co., Inc. v. Madison, 79 W (2d) 345, 255 NW (2d) 551.