BUILDING AND CONSTRUCTION TRADES COUNCIL OF SOUTH CENTRAL WISCONSIN, Billy Harrelson, Thomas Kiesgen and Mitchell Terhaar, Plaintiffs-Appellants,†

v.

WAUNAKEE COMMUNITY SCHOOL DISTRICT, J.P. Cullen & Sons, Inc., Electri-Tec Electrical Construction, Inc., Maly Roofing Co., Inc., and Gene Hamele, Defendants-Respondents.

Court of Appeals

*No. 97–3282. Oral argument May 21, 1998.—Decided August 27, 1998.*

(Also reported in 585 N.W.2d 726.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Matthew R. Robbins, John J. Brennan* and *Jill M. Hartley* of *Previant, Goldberg, Uelmen, Gratz, Miller and Brueggeman, S.C.* of Milwaukee. Oral argument by *Matthew R. Robbins*.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *James K. Pease, Jr., Douglas E. Witte,* and *Devon R. Baumbach* of *Melli, Walker, Pease & Ruhley, S.C.* of Madison; *Dennis M. White* of *Brennan, Steil, Basting & MacDougall, S.C.* of Madison; and *Michael J. Westcott* and *Paul Voelker* of *Axley Brynelson, LLP* of Madison. Oral argument by *James Pease, Jr.,* and *Edith Merila*.

Before Dykman, P.J., Eich and Roggensack, JJ.

EICH, J.   The Building and Construction Trades Council of South Central Wisconsin and several individual labor union officials (collectively the Council) appeal from an order dismissing their open-records law mandamus action against the Waunakee School District. The Council requested that the District provide it access to the payroll records of certain subcontractors working on a school construction project. The sole issue is whether the open records law, §§ 19.31–36, STATS., considered in light of the prevailing wage law, § 66.293, requires the District to obtain the records from the subcontractors and provide them to the Council. We conclude that it does not and affirm the circuit court's order.

The facts are not in dispute. The District contracted with J.P. Cullen & Sons to build an elementary school and administration building. Cullen subcontracted portions of the work on the project to the Electri-Tec Electrical Construction Company and the Maly Roofing Company. Neither Maly nor Electri-Tec had any contractual relationship with the District. The Council submitted a request to the District to inspect

> all payroll records for every laborer, workman and mechanic employed by Electri-Tec [and Maly] . . ., for all work performed on the Prairie Elementary School and Administration Building project. This records request includes, but is not limited to: the names, addresses and telephone numbers of each employee; the classification/ trade/occupation of each employee; the number of hours worked by each employee and the wages and benefits earned by each employee.[1]

The District denied the request, explaining that it had not generated, nor did it possess, any such records and that, based on its understanding, neither did its general contractor, Cullen. The Council then brought this action seeking the District's compliance with its request. The District, Cullen and the subcontractors moved for summary judgment and the trial court granted the motion. The Council appeals from the court's order dismissing its action.

We review summary judgments *de novo*, applying the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). The remedy is appropriate in cases

---

[1] Actually, there were several requests from various union officials, but each contained the identical quoted language.

where there is no genuine issue of material fact and the moving party has established his or her entitlement to judgment as a matter of law. *Germanotta v. National Indem. Co.*, 119 Wis. 2d 293, 296, 349 N.W.2d 733, 735 (Ct. App. 1984). That is the situation here: the pleadings state and join the issues, and the affidavits and other proofs filed by the parties reveal no disputed issues of fact, leaving only the legal issues for resolution. *See, e.g., State Bank of La Crosse v. Elsen*, 128 Wis. 2d 508, 511, 383 N.W.2d 916, 917 (Ct. App. 1986).

We begin by considering the underlying policy and applicable provisions of the open records law. Recognizing that "a representative government is dependent upon an informed electorate," the legislature enacted the law to provide Wisconsin citizens "the greatest possible information regarding the affairs of government and the official acts of [public] officers . . . ." Section 19.31, STATS. In furtherance of that policy, § 19.35(1) gives anyone the "right to inspect any record." Section 19.32(2) defines "record" as "any material on which written, drawn, printed, spoken, visual or electromagnetic information is recorded . . . which has been created or is being kept by an authority," and § 19.32(1) defines "authority" as including "a state or local office, . . . board, . . . or public body corporate and politic . . . ." As the Council correctly observes, we have consistently recognized the "strong public policy in openness of government" expressed in the open records law, and the statutory presumption of "complete public access" to the records of public agencies. *Milwaukee Journal v. University of Wis. Bd. of Regents*, 163 Wis. 2d 933, 935–36, 472 N.W.2d 607, 609 (Ct. App. 1991).

The portion of the open records law lying at the heart of this dispute is in the section setting forth "limitations" on the access to, and the withholding of,

records—specifically, the "contractors' records" provisions of § 19.36(3), STATS., stating that "[e]ach authority shall make available for inspection . . . any record produced or collected under a contract entered into by the authority with a person other than an authority to the same extent as if the record were maintained by the authority." This statute is the primary underpinning for the Council's claimed right to inspect Maly's and Electri-Tec's records.

The Council's first argument is based on what it sees as the interplay between the state "prevailing wage rate law," § 66.293, STATS., and the "contractors' records" provisions of § 19.36(3). It proceeds as follows: (1) Section 66.293—which is incorporated into the contracts between the District and Cullen, and also the contracts between Cullen and its subcontractors—requires compliance with all applicable laws and regulations, including minimum wage rates, and also requires that accurate payroll records be kept for all work done on the project; (2) under cases such as *Strong v. C.I.R., Inc.*, 184 Wis. 2d 619, 624, 516 N.W.2d 719, 721–22 (1994), Cullen, as the general contractor, has a duty to ensure that all workers on the job—including those employed by subcontractors—are paid the prevailing wage; (3) therefore, according to the Council, "the subcontractors' payroll records are subject to inspection under § 19.36(3)," and the District, as the public "authority" for whose benefit the project is being undertaken, is obligated to obtain and provide the records to the Council.

The problem with the argument, of course, is that § 19.36(3), STATS., plainly addresses contracts between the "authority"—here the District—and the party whose records are being sought. It requires the District to make available for inspection any record that is

580

either produced or collected "under a contract entered into by the authority [*e.g.*, the District] with a person other than an authority [*e.g.*, Cullen]" to the "same extent as if the record were maintained by the authority." But the Council is not seeking any records produced or collected under the District's contract with Cullen. Its request goes to another level entirely: It seeks information that Cullen's subcontractors—which, like Cullen, are private, rather than public, entities—produced for their own independent purposes. And it offers as grounds for such access not the contract between the District and Cullen—which is the only contractual relationship specified in § 19.36(3)—but the separate contracts between Cullen and its subcontractors.

■ The Council has not provided us with any authority that would bridge the gap between (a) the requirement in § 19.36(3) that the District disclose records produced or collected under its contract with Cullen, and (b) the records it seeks, which are, as indicated, the payroll records of two companies who had entered into subcontracts with Cullen—subcontracts to which the District is not a party. Instead, the Council criticizes the trial court's decision denying its request by asserting that "Cullen's decision to subcontract part of its obligations under [its] contract [with the District] does not excuse its duty to ensure compliance with the prevailing wage law nor does it preclude the mechanisms available for monitoring compliance." And it characterizes the trial court's decision as "an invitation to evade the law" because, "[u]nder [its] rationale," a contractor could subcontract all work on a given public project and thus evade all of the require-

ments of the prevailing wage law. We are not persuaded.

The purpose of the open records law is, as we have noted above, to shed light on the workings of government and the acts of public officers and employees. The purpose of the prevailing wage law is to set the prevailing wage rates and hours of work for employees of private employers working on public works projects. The wage law contains specific statutory procedures for monitoring and securing compliance with its requirements. Section 66.293(10)(c), STATS., for example, states that, upon the request of "any person," the Department of Workforce Development "shall inspect the payroll records of any contractor, subcontractor or agent performing work on a project that is subject to this section to ensure compliance with this section." And the law provides both civil remedies and criminal penalties for violation of its terms. Section 66.293(11).

The Council refers us to three out-of-state cases in support of its argument; but we do not believe they advance its position to any significant degree. It cites *O.G. Sansone Co. v. Department of Transportation*, 55 Cal. App. 3d 434 (Cal. App. 1976), for example, for the proposition that a prime contractor assumes responsibility for its subcontractor's compliance with the prevailing wage law. We do not consider that such an obligation, imposed on California contractors by the California Court of Appeals—or even the Wisconsin Supreme Court's statement in *Strong* that prime contractors are guarantors of payment of the prevailing wage to all workers on the job, *Strong*, 184 Wis. 2d at 624, 516 N.W.2d at 721–22—makes Electri-Tec's and Maly's payroll records public records under § 19.36(3), STATS. Neither *Sansone* nor *Strong* had anything to do

582

with a public-records law request, and we do not see how a contractor's duty to ensure payment of the prevailing wage to all workers on a public-works project—including workers employed by subcontractors—renders the subcontractors' payroll records subject to inspection as public records under § 19.36(3), STATS., which, as we discussed above, plainly applies only to documents produced pursuant to the contract between the District and Cullen. The other cases the Council cites are unpublished, unreported decisions of the Ohio Court of Appeals which state on their face that they are subject to rules of the Ohio Supreme Court imposing restrictions and limitations on their use. *See Pipe Fitters Union Local 392 v. Kokosing Constr. Co.*, 1996 WL 48932 (Ohio App. 1st Dist., Aug. 23, 1996); *Cremeans v. Jinco*, 1986 WL 6334 (Ohio App. 10th Dist., June 5, 1986). We consider them neither precedential nor persuasive in any degree.

The Council disagrees. Citing *State ex rel. Blum v. Board of Education,* 209 Wis. 2d 377, 565 N.W.2d 140 (Ct. App. 1997), it argues that because, under the prevailing wage law, § 66.293(10)(b), STATS., the District, as the "contracting local government," is authorized to "demand and examine . . . copies of payrolls and other records and information relating to the wages paid" to workers on the project to determine compliance with the law, Maly's and Electri-Tec's payroll records must be considered public records subject to inspection by the Council. *Blum,* however, did not involve § 19.36(3), the statute at issue here. In that case a high school student who had apparently been passed over for the class valedictorian's position—with its attendant scholarship—sought access to "interim" grades compiled by the teachers three weeks into the final school quarter for the student who had received the honor.

583

The school board denied the request, stating that the teachers' records of such "partial grades" were immaterial in determining the award's recipient and incomplete, and that their compilation and tabulation would constitute an undue burden on the school's administrative staff. *Id.* at 380, 565 N.W.2d at 142. The circuit court ruled that the interim grades recorded by teachers were not records "kept by an authority"—*i.e.,* the school board—within the meaning of the general provisions of the open records law. On appeal, we held that because an "authority" such as a school board "must act through its officers and employees," records are "kept" by the board within the meaning of the open records law "whenever they are in the possession of an officer or employee who falls under the supervision of the 'authority.' " *Id.* at 382, 565 N.W.2d at 142–43. And because there was no factual record to support the board's assertion that it "did not, does not, nor in the future intends to create or keep . . . interim marks and grades . . . created by individual teachers," such assertions "do not negate the Board's *entitlement* to require teachers to submit interim grades to the Board. Even if the interim grades are physically in the possession of teachers and not Board members, they are nonetheless within the 'lawful possession or control' of the Board." *Id.* (citations omitted; emphasis in the original).[2]

The Council argues that the Waunakee School District is in the same position as the school board in *Blum*

---

[2] In so holding, we noted: "While a factual showing might be made that the information requested in this case was excluded from the definition of 'record' in § 19.32(2), STATS., the Board failed to produce any evidence that would overcome the strong presumption in favor of public access required by statute and case law." *State ex rel. Blum v. Board of Educ.,* 209 Wis. 2d 377, 383, 565 N.W.2d 140, 143 (Ct. App. 1997).

in that it is authorized by statute to demand the payroll records of all workers on the project—including, presumably, those employed by Cullen's subcontractors—and, as a result, these records are subject to inspection by the Council.

The problem with the argument is that the Council's only right to inspection is that granted by the contractors' records provisions of § 19.36(3), STATS., which, because of its application to the private records of persons or entities named in the statute, is an exception to the underlying policy of the law—that "all persons are entitled to the greatest possible information regarding *the affairs of government and the official acts of [government] officers and employees . . . .*" Section 19.31, STATS. (emphasis added). As we have also said, § 19.36(3) reaches only such records as are produced or collected under the terms of the contract between the District and Cullen, and those are not the records the Council seeks. The Council has requested disclosure of the records of Maly and Electri-Tec, neither of which has any contractual relationship with the District. Thus, the facts of this case not only take it beyond the express terms of § 19.36(3), but also place it in direct contrast to *Blum*, which involved records in the hands of public officials—employees and officers of the school board—and thus subject to disclosure under the general provisions of the law.[3]

---

[3] The only reported case discussing the "contractors' records" provisions of § 19.36(3), STATS., in any form is *Journal/Sentinel, Inc. v. Shorewood School Board,* 186 Wis. 2d 443, 521 N.W.2d 165 (Ct. App. 1994). In that case, the *Journal* sued the members of a suburban school board and sought access to a "memorandum of understanding" that recited the settlement terms of a defamation lawsuit a former school superintendent commenced against the district and the board. The memoran-

The Council next argues that its request should be granted on public policy grounds, claiming that "the

dum was in the possession of a private law firm which had been retained by the board. We held that the statute applied, concluding as follows:

> Although [the law firm] is a private law firm, and not itself an "authority," the record is undisputed that it drafted and has maintained custody of the "Memorandum of Understanding" as attorney for the school board, which *is* an "authority" under the public-records law. The school board['s] . . . argument thus resolves to whether a public body may avoid the public access mandated by the public-records law by delegating both the record's creation and custody to an agent. Posing this question provides its answer: it may not. . . .
>
> A lawyer retained by a client is the client's agent for the purposes of the retention agreement. . . . There is no doubt but that the "Memorandum of Understanding" would be a "record" under the public-records law if it were either "created" or "kept" by the school board, its officers, or employees. Delegating either of those responsibilities to outside counsel does not thereby remove the document from the statute's definition of "record."

*Id.* at 452–54, 521 N.W.2d at 169–70.

In this case, as we have stressed in this opinion, the records the Council seeks are not the District's. They are not even Cullen's. They are those of Maly and Electri-Tec, two of Cullen's subcontractors who have no contractual relationship whatsoever with the only public "authority" in this case: the Waunakee School District. Nor does this case present the type of danger that § 19.36(3) was intended to prevent: "avoid[ance of] the public access mandated by the public records law by delegating the record's creation and custody to an agent." *Id.* at 452–53, 521 N.W.2d at 170. The District had not prepared or collected any records relating to wages paid to workers for subcontractors on the construction project; nor had it delegated to Cullen, its contractor, any responsibility for creating collecting or holding any such records. The sought-after records are those of Maly and Electri-Tec, prepared for their own purposes. And Maly's and Electri-Tec's only connection with the District was their partici-

public interest in assuring compliance with the prevailing wage law is served by disclosure of subcontractor payroll records." The argument is grounded on the Council's assertion that it is seeking the information "to determine whether the subcontractors had paid the prevailing wage rate required by law," and that its "role in supplementing the department [of Workforce Development]'s enforcement mechanism with its own inquiry furthers the public interest" in that respect.[4]

---

pation—pursuant to contracts with a third party—in the work of constructing the school buildings. There is nothing in the record to suggest that, as in *Blum*, either Maly or Electri-Tec was acting as the District's "agents," or that the District "delegated" anything away in order to avoid its public-agency responsibilities under the open records law.

The supreme court did, as the Council notes in its brief, state in *Nichols v. Bennett*, 199 Wis. 2d 268, 274, 544 N.W.2d 428, 431 (1996), that "it is the nature of the documents [being sought] and not their location which determines their status" under the public records law. Here, too, we do not see how the assertion aids the Council's position, for the "nature" of the documents the Council seeks is that they are, in the first instance, *private* records which may assume a status equivalent to that of public records under § 19.36(3), STATS., only if they have been produced or collected under a contract between the District and Cullen, which they plainly were not. Thus, their "nature" is something entirely different from that of the documents sought in *Blum* and *Journal / Sentinel*.

[4] It has long been recognized that neither the requester's identity nor the reasons underlying the request are material in balancing the public interest in disclosure against the public interest in confidentiality in public-records law cases. *See, e.g., Ledford v. Turcotte,* 195 Wis. 2d 244, 252, 536 N.W.2d 130, 133 (Ct. App. 1995). In this case, however, because the Council has made the reasons underlying its request the linchpin of its public-policy argument, we consider them in this opinion.

We are not persuaded. First, the Council's argument that its position in this regard is supported by legal authority to which we owe "great deference" is wholly lacking in merit. The cited "authority" comprises two letters, one from the administrator of the Equal Rights Division of the Department of Industry, Labor and Human Relations stating that her department has considered the payroll "records" required to be kept under a former provision of the prevailing wage law to be "synonymous with the term 'record' referred to in § 19.36(3), Stats.," and another from an assistant attorney general to a labor-union official stating that, to his knowledge, DILHR had "determined that allowing access to contractor wage records will not adversely affect enforcement of section 66.293 and may actually facilitate enforcement." As to the letter from the DILHR administrator, it is no more than that: a letter written by a state employee; it is not at all the type of contested-case agency decision to which, under the cases cited by the Council, courts will traditionally accord some degree of "deference."[5] The assistant attorney general's letter is of similar import. Not only

[5] *See, e.g., Barron Elec. Coop. v. PSC,* 212 Wis. 2d 752, 760–63, 569 N.W.2d 726, 731–32 (Ct. App. 1997) (discussing circumstances under which courts will pay varying degrees of deference to legal conclusions and statutory interpretations made by an "expert" administrative agency in a case pending before it).

We have also held, however, that, while we may "give due deference to an agency's long-standing interpretations of its own regulations and the statutes under which the agency operates, that deference is not given when that interpretation is founded upon nothing but the opinions of the agency's subordinate employees." *DeRosso Landfill Co. v. City of Oak Creek,* 191 Wis. 2d 46, 63, 528 N.W.2d 468, 475 (Ct. App. 1995), *rev'd on other grounds,* 200 Wis. 2d 642, 547 N.W.2d 770 (1996).

is it not a formal opinion of the attorney general—and even formal attorney general opinions have only such persuasive authority as we feel may be warranted in a given case, *State ex rel. North v. Goetz,* 116 Wis. 2d 239, 245, 342 N.W.2d 747, 750 (Ct. App. 1983)—but it does not even purport to offer the writer's opinion. It is no more than a statement of the writer's understanding of a position taken by another state agency. Here, too, we find neither document to be of either legal or persuasive significance with respect to the Council's position.

Second, as we have noted above, the prevailing wage law is enforced by the Department of Workforce Development and the department is given broad enforcement powers to that end—including the institution of criminal charges for violation of its terms. Section 66.293(11), STATS. And, as we also have noted, the legislature has provided for public input into the enforcement process by authorizing any interested person to request the department to inspect the records of all contractors and subcontractors on a public project to ensure they are complying with the law. Section 66.293(10)(c), STATS.

Beyond that, we think *Chauffeurs, Teamsters & Helpers v. WERC,* 51 Wis. 2d 391, 187 N.W.2d 364 (1971), although not an open records case, is instructive with respect to the Council's argument that its request should be granted because it is attempting to enforce the provisions of the prevailing wage law. In *Chauffeurs,* a union filed unfair labor practice charges against an employer charging that it was not paying the prevailing wage to some of its employees. The 1971 version of the prevailing wage law, like the present version, contained its own enforcement remedies, including a provision (similar to that in the present § 66.293(11)(b)) making violation of the act a crime.

The employer asked WERC to dismiss the petition, claiming the union lacked standing to pursue the charges. The commission agreed, and the employer sought judicial review of that decision. The circuit court reversed the commission, concluding that the union's action should be allowed to continue because it was "necessary to effectuate the purpose of the prevailing wage law." *Id.* at 399, 187 N.W.2d at 367. That is, of course, the same position the Council advanced in this case. The supreme court reversed, finding a "basic weakness in the trial court's analysis." Noting the legislature's "clear" intent to enforce the prevailing wage law through the named state agency (then the highway commission) and the ultimate criminal sanctions, the court concluded that allowing the union to prosecute its action would circumvent the enforcement methods the legislature saw fit to include in the act, and that because "[n]o showing ha[d] been made . . . that [the enforcement mechanisms specified by the legislature] have been tried and found inadequate," the trial court's decision should not stand. *Id.* at 399–401, 187 N.W.2d at 367–68.

Nor are we persuaded by the Council's citation to federal cases such as *IBEW Local No. 5 v. U.S. Department of Housing and Urban Development*, 852 F.2d 87 (3d Cir. 1988). In *IBEW*, a union filed a request under the Freedom of Information Act, 5 U.S.C. § 552, asking the Department of Housing and Urban Development to release to the union all payroll records in its possession—including names, addresses and social security numbers—relating to nonunion employees working for a federal contractor on a construction project covered by the Davis-Bacon Act, the federal prevailing wage

law.[6] The court, concluding that the public interest in disclosure was not clearly outweighed by the affected employees' privacy interests, required the department to disclose all of the requested information (except the workers' social security numbers). In so ruling, the court said that release of the workers' names and addresses, in addition to the wages being paid them, was proper because, among other reasons, the information "would facilitate the Union's investigation of possible Davis-Bacon Act violations, and thereby would further the public interest." *Id.* at 90.

Whatever the effect of *IBEW*, it has been effectively overruled by a subsequent Third Circuit case, *Sheet Metal Workers International Ass'n, Local No. 19 v. Department of Veterans Affairs*, 135 F.3d 891 (3d Cir. 1998). In that case, a union requested from the Department of Veterans Affairs all payroll records of contractors and subcontractors that had been submitted to the department—as required by federal law—in connection with a public-works construction project. The department released only the wages paid by job classification, withholding all information it considered "personal," such as employees' names, addresses, social security numbers, and similar information. The union sued, seeking full disclosure, and the trial court ruled in its favor. The court of appeals reversed and, noting several intervening decisions of the United States Supreme Court placing much greater emphasis on the privacy rights of affected workers, concluded that those interests far outweighed any public interest in disclosure of the redacted information. *Id.* at 904–05.

---

[6] Unlike the Wisconsin prevailing wage law, the Davis-Bacon Act specifically required contractors to submit all payroll records to the department on a weekly basis. 40 U.S.C. § 276c.

In so ruling, the *Sheet Metal Workers* court rejected the union's argument that having someone, such as the union, "monitor" agency enforcement of the prevailing wage law serves the public interest with respect to both the open records and prevailing wage laws—the same position taken by the Council in this case—concluding that the argument "overestimates the public interest to be served by disclosure." *Id.* at 903. The court continued:

> It would appear that since our decision in *IBEW* . . . the Supreme Court has refined and reformulated the applicable standard measuring the "core purpose" of the Freedom of Information Act, namely contributing significantly to public understanding of the operations or activities of government. After the decisions [of the United States Supreme Court] in Reporters Committee[7] and Department of Defense,[8] no court of appeals has given much weight to the monitoring function. We are compelled to do likewise.

*Id.* at 903. Then, after recognizing that, "in a broad sense," the public may have an interest in knowing whether a governmental agency "fairly and adequately enforces prevailing wage laws," the court went on to note that "whatever public interest there may be in knowing whether private parties are violating the law is not the sort of public interest advanced by the [Freedom of Information Act] . . ."; it stated:

> We are reluctant to overstate the public interest served by disclosure in light of diminishing importance attributed to the monitoring function and the

[7] *Department of Justice v. Reporters Comm.*, 489 U.S. 749 (1989).
[8] *Department of Defense v. FLRA*, 510 U.S. 487 (1994).

unproven ability of the requested information to assist in the enforcement of prevailing wage laws. Disclosure will not contribute significantly to the public's understanding of government activities.

*Id.* at 904.[9]

It is true, as we noted at the outset of this discussion, that the *Sheet Metal Workers* decision left intact the Union's request for the basic payroll information. But—as was the case in *IBEW*—that information was already in the agency's hands pursuant to federal law and, as such, constituted a record held and maintained by a governmental agency—precisely the type of "public" record the Freedom of Information Act, like Wisconsin's open records law, was designed to cover.[10] There was no attempt in *IBEW, Sheet Metal Workers* or any of the other federal cases cited by the Council to

---

[9] The *Sheet Metal Workers* court also emphasized that other avenues existed by which the union might achieve its avowed purpose of "monitoring" enforcement of the prevailing wage law—such as dispensing fliers or posting signs to "solicit information from workers about possible wage law violations." *Sheet Metal Workers Int'l Ass'n, Local No. 19 v. Department of Veterans Affairs*, 135 F.3d 891, 904 (3d Cir. 1998). In Wisconsin, of course, the Council, or anyone else interested in enforcement of the prevailing wage law, has a much more direct, much more efficient avenue to pursue: a request to the Department of Workforce Development under § 66.293(10)(c), Stats., to investigate any contractor's or subcontractor's compliance with the law.

[10] According to the Supreme Court, the underlying policy of the Freedom of Information Act is to "open [government] agency action to the light of public scrutiny," *Department of the Air Force v. Rose*, 425 U.S. 352, 372 (1976), by providing a right of public access to "official information" held in "official hands." *Environmental Protection Agency v. Mink*, 410 U.S. 73, 80 (1973).

gain access to records of a private party in that party's hands.

*By the Court.*—Order affirmed.