Town of Burnside and Town of Lincoln,
Plaintiffs,

v.

City of Independence,
Defendant-Respondent,

Town of Arcadia,
Intervenor-Appellant.

Court of Appeals

*No. 2016AP34–AC. Submitted on briefs June 28, 2016.
—Decided November 29, 2016.*

2016 WI App 94

(Also reported in 889 N.W.2d 186.)

On behalf of the intervenor-appellant, the cause was submitted on the briefs of *Craig R. Steger* of *Hale, Skemp, Hanson, Skemp & Sleik*, La Crosse.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Ryan J. Steffes* of *Weld Riley, S.C.*, Eau Claire.

Before Stark, P.J., Hruz and Seidl, JJ.

¶ 1. HRUZ, J. The Town of Arcadia appeals an order dismissing its claims against the City of Independence. Independence passed three annexation ordinances; each ordinance pertained to separate land within the towns of Arcadia, Burnside and Lincoln, respectively. Burnside and Lincoln commenced this action challenging the validity of the annexation ordinances; they later stipulated to the dismissal of their claims against Independence. Arcadia then sought to take up those towns' claims, and it successfully intervened in the Lincoln/Burnside action. However, the circuit court later granted Independence's motion to dismiss Arcadia's claims, concluding they were untimely.

¶ 2. We agree with the circuit court that Arcadia's claims brought through its intervention came too late. Wisconsin Stat. §§ 66.0217(11)(a) and 893.73(2)(b) establish a ninety-day limitations period for actions

challenging the validity of an annexation.[1] In this case, Independence adopted the annexation ordinances on August 19, 2014, but Arcadia did not seek to intervene and bring its claims in the Burnside/Lincoln action until April 30, 2015. We are unpersuaded by Arcadia's arguments that its claims were timely filed, including its assertions regarding the relation-back doctrine, tolling, and its status as an intervenor. Accordingly, we affirm.

## BACKGROUND

¶ 3. On August 19, 2014, Independence passed three annexation ordinances in response to petitions from affected persons. Each ordinance pertained to territory in a different town: Arcadia, Burnside and Lincoln. It is undisputed that the vast majority of the annexed land was previously located within Arcadia's boundaries.[2] The annexation ordinances were preceded by a Pre-Annexation Agreement executed by Independence and Superior Silica Sands, LLC. The agreement included the terms under which Superior Silica Sands would operate a sand mine upon completion of the annexation.

¶ 4. Burnside and Lincoln jointly sought review of the annexation from the Wisconsin Department of Administration.[3] The department issued a written determination that certain of the annexed territory

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

[2] Independence's answer to the Burnside/Lincoln complaint admitted that the total annexed property consisted of twenty acres in Burnside, approximately eighty acres in Lincoln, and nearly 1,600 acres in Arcadia. Arcadia refers to this as a "balloon-on-a-string" annexation, through which Independence annexed small segments of land in two municipalities (the "string") to reach the "balloon" territory in Arcadia.

[3] Our review of the record reveals no indication Arcadia

was not contiguous. Burnside and Lincoln then filed the present action on November 17, 2014. They asserted the annexation petition relating to the territory in Lincoln was procedurally defective because it was missing a signature of a necessary person.[4] Additionally, they asserted the ordinances were invalid for lack of contiguousness.

¶ 5. Burnside and Lincoln ultimately entered into a stipulation with Independence on April 13, 2015, pursuant to Wis. Stat. § 66.0225. The stipulation included a municipal agreement wherein the parties expressly stated they wished to avoid the "expense, uncertainty and delay of litigation and to provide a mechanism for defining future boundaries between the three . . . municipalities." Burnside and Lincoln agreed to dismiss their challenge to the validity of Independence's annexation ordinances, and the parties further agreed as to how future annexation would be handled for a period of twenty years. According to Independence,

joined in the Burnside/Lincoln administrative review, nor that it sought department review of the annexation on its own accord. Wisconsin Stat. § 66.0217(11)(c) would appear to require an attempt at department review as a prerequisite to a subsequent court challenge: "Except as provided in sub. (6)(d)2."—which provides towns forty-five days from their receipt of the department's findings to challenge an annexation in circuit courts—"no action on any grounds, whether procedural or jurisdictional, to contest the validity of an annexation under sub. (2), may be brought by any town." Independence has not argued that Arcadia's failure to seek department review provides an alternative basis to affirm the order dismissing Arcadia's claims, and we therefore do not address § 66.0217(11)(c) further.

[4] Independence, for its part, admitted the signature was not originally included with the petition, but it noted the necessary signature was obtained prior to the time when the petition was filed with the Independence city clerk.

all that remained to effectuate the settlement was for the circuit court to sign a final order dismissing the claims.

¶ 6. On April 30, 2015, Arcadia filed a motion to intervene in the Burnside/Lincoln action pursuant to WIS. STAT. § 803.09. Arcadia noted Independence's answer had acknowledged Arcadia's interest in part of the annexed territory, and Arcadia argued it should be permitted to intervene as a right. See WIS. STAT. § 66.0233. Arcadia also filed a proposed complaint, which purported to wholly incorporate the earlier Burnside/Lincoln complaint and challenged the annexation on generally the same bases as articulated in that document.[5] Independence opposed Arcadia's intervention motion.[6] The circuit court granted Arcadia's motion to intervene, and Arcadia filed the proposed complaint.

¶ 7. Independence filed a motion to dismiss Arcadia's claims. Independence argued that pursuant to WIS. STAT. §§ 66.0217(11)(a) and 893.73(2), Arcadia was required, but failed, to commence an action within ninety days of the adoption of the annexation ordinances. In response, Arcadia argued its claims were timely because Burnside/Lincoln's claims were timely,

---

[5] In addition to alleging a missing signature of a necessary person as to Lincoln's petition, Arcadia alleged there was one signature missing on each of the annexation petitions pertaining to the Arcadia and Burnside territories.

[6] In fact, Independence raised the timeliness of Arcadia's claims immediately, asserting in its brief opposing intervention that Arcadia's claims against it were time-barred regardless of whether Arcadia was permitted to intervene. Independence made clear throughout the proceedings related to Arcadia's motion to intervene that, if intervention was permitted, it would file a motion to dismiss Arcadia's claims as time-barred.

emphasizing that the relevant statutes referred to the commencement of an "action," not "claims." Arcadia asserted it had not "injected a new claim into the action," but rather was "simply an additional party requesting the same relief originally and timely requested when this action was commenced." Alternatively, Arcadia argued that if the statutes applied to individual claims—and not to the mere commencement of "an" action—the expiration of the limitations period was tolled by Burnside/Lincoln's timely filed suit, pursuant to WIS. STAT. § 893.13.

¶ 8. Following a hearing, the circuit court entered an order granting Independence's motion to dismiss. The order adopted the court's oral decision, in which the court concluded that Arcadia was required to bring its claims within the ninety-day time period prescribed by WIS. STAT. §§ 66.0217(11)(a) and 893.73(2). The court rejected Arcadia's statutory interpretation, tolling, and other arguments. Arcadia now appeals.[7]

## DISCUSSION

¶ 9. This case was decided upon a motion to dismiss on statute of limitations grounds. Resolution of this appeal therefore involves the interpretation and application of WIS. STAT. §§ 66.0217(11)(a) and 893.73(2)(b), as well as other statutes affecting the timeliness of a party's assertion of a legal claim. These

---

[7] On May 24, 2016, this court entered an order observing that prompt judicial resolution of annexation disputes is favored, *see* WIS. STAT. § 66.0217(11)(b), and adding the "AC" suffix to the appeal number to indicate the accelerated resolution schedule.

matters ordinarily present questions of law that we review de novo. *See MercyCare Ins. Co. v. Wisconsin Comm'r of Ins.*, 2010 WI 87, ¶ 26, 328 Wis. 2d 110, 786 N.W.2d 785. "Whether a statutory limitations period requires dismissal of an action where the underlying facts are not in dispute is also a question of law." *Hamilton v. Hamilton*, 2003 WI 50, ¶ 14, 261 Wis. 2d 458, 661 N.W.2d 832. The underlying facts in this case relevant to the statutory limitations periods are not in dispute.

¶ 10. Annexations initiated by electors and property owners are governed by WIS. STAT. § 66.0217. That section contemplates that annexation may occur in a number of ways, including by unanimous approval of the affected individuals. *See* § 66.0217(2), (3). This "unanimous approval" method, which was used here, requires a petition signed by "all of the electors residing in the territory and the owners of all of the real property in the territory"; in addition, the annexed territory must be "contiguous" to the annexing municipality. Subsec. 66.0217(2).

¶ 11. Regardless of whether the annexation occurs by unanimous approval or another method under WIS. STAT. § 66.0217, subsection (11) states that "[a]n action on any grounds, whether procedural or jurisdictional, to contest the validity of an annexation shall be commenced within the time after adoption of the annexation ordinance provided by [WIS. STAT. §] 893.73(2)." Subsection 893.73(2)(b), in turn, states that an action contesting the validity of an annexation must be brought within ninety days after the adoption of the annexation ordinance or it is time barred. The term "adoption" refers to the legislative body's act of voting to approve the ordinance, not to the approval of the

ordinance by the mayor, the publication date of the ordinance, or the ordinance's effective date. *Town of Sheboygan v. City of Sheboygan*, 150 Wis. 2d 210, 214, 441 N.W.2d 752 (Ct. App. 1989).

¶ 12. It is undisputed that Arcadia's attempt to intervene in the Burnside/Lincoln action came after the ninety-day period established by Wis. Stat. § 893.73(2)(b) had expired.[8] Independence passed all three annexation ordinances on August 19, 2014. The ninety-day period expired on November 17, 2014, the date on which Burnside and Lincoln filed their summons and complaint. Arcadia moved to intervene in the Burnside/Lincoln action on April 30, 2015. At that point, the statute of limitations had been expired for over five months.

¶ 13. Arcadia attempts to escape the expiration of the statute of limitations in a number of ways, each of which generally relates to Arcadia's overall argument that its claims should go forward because they were substantively the same claims as those asserted by Burnside and Lincoln. First, Arcadia resurrects its statutory interpretation argument, asserting the references to an "action" in Wis. Stat. §§ 66.0217(11)(a) and 893.73(2) mean that as long as someone commences an "action" within the applicable limitations period, "additional parties may be added to the litigation through amendment or intervention" without regard to the limitations period's expiration. Second,

---

[8] As the parties have not briefed the issue, we assume (without deciding) that the "end point" by which compliance with the statute of limitations was to occur was Arcadia's motion to intervene and not the later filing of the intervenor complaint. Even under this more generous (to Arcadia) interpretation of the relevant statutes, Arcadia's action was filed well after the ninety-day period had expired.

Arcadia appears to rely on the relation-back doctrine, under which certain amended pleadings are deemed timely filed despite the ostensible running of the applicable statute of limitations. Third, Arcadia asserts the running of the ninety-day limitations period was tolled by operation of WIS. STAT. § 893.13(2), as that statute was interpreted in *Aetna Casualty & Surety Co. v. Owen*, 191 Wis. 2d 744, 530 N.W.2d 51 (Ct. App. 1995). Fourth and finally, Arcadia asserts it is not subject to a statute of limitations defense at all because, as an intervening party, it should be treated as though it was an original party for statute of limitations purposes. We reject each of these arguments.

¶ 14. We begin with Arcadia's statutory interpretation argument regarding WIS. STAT. §§ 66.0217(11)(a) and 893.73(2). Arcadia observes these two statutes, which combine to set forth the applicable limitations period in this case, refer to "an action," not to individual "claims." *See* §§ 66.0217(11)(a) ("An action on any grounds . . . ."); 893.73(2)(b) ("An action to contest the validity of an annexation . . . ."). According to Arcadia, because Lincoln and Burnside timely commenced this "action," Arcadia's claims are also timely because "an" action, generally, was timely filed. We are unpersuaded by this seemingly novel argument.

¶ 15. First, Arcadia's resort to the nomenclature the legislature has used is unavailing on a basic level. It would make little sense to say a "claim" must be "commenced" by a certain time. A "claim" is simply "[a]n interest or remedy recognized at law"; it is synonymous with a "cause of action." *Claim,* BLACK's LAW DICTIONARY 302 (10th ed. 2014). In the judicial context, claims are necessarily made through the ve-

813

hicle of "actions," which are "civil or criminal judicial proceeding[s]." *Action,* BLACK'S LAW DICTIONARY 35 (10th ed. 2014); *see also S.P.A. ex rel. Ball v. Grinnell Mut. Reins. Co.,* 2011 WI App 31, ¶ 7, 332 Wis. 2d 134, 796 N.W.2d 874 (observing that "action," as used in the civil procedure statutes, refers to an entire proceeding, not to one or more parts within a proceeding). A party can possess a claim without it commencing an action (for example, what Arcadia seemed to be doing before allowing the ninety-day limitations period to run, and before it moved to intervene), but a party cannot properly commence an action without it asserting at least one valid claim. Put another way, because a claim provides the basis for an action, a claim necessarily exists before an action is brought, and what matters for limitations purposes is whether an action is timely commenced asserting that claim.[9] Contrary to Arcadia's argument, the legislative choice to refer to an "action" reflects these basic principles.

¶ 16. Second, as Independence notes, many (perhaps all) Wisconsin statutes of limitation use commencement of "an action" to set the time by which a claimant must act to timely preserve a claim. *See, e.g.,* WIS. STAT. §§ 893.43 (action on contract); 893.44 (action to recover compensation); 893.51 (action for wrongful

---

[9] To be sure, sometimes a limitations period can expire before a claim even exists, such as when a statute of repose precludes the bringing of a claim after a certain period of time despite the claim having yet to accrue. *See Wenke v. Gehl Co.,* 2004 WI 103, ¶ 16, 274 Wis. 2d 220, 682 N.W.2d 405 ("[A] period of repose bars a suit a fixed number of years after an action by the defendant (such as manufacturing a product), even if this period ends before the plaintiff suffers any injury." (quoting *Leverence v. United States Fid. & Guar.,* 158 Wis. 2d 64, 92, 462 N.W.2d 218 (Ct. App. 1990))).

taking of personal property); 893.52 (action for damages for injury to property). Important for our purposes, and as a general matter, each party has its own claim or claims that it must assert in a timely commenced action in order to avoid the running of a statute of limitations. *See Barnes v. WISCO Hotel Group*, 2009 WI App 72, ¶¶ 20, 25, 318 Wis. 2d 537, 767 N.W.2d 352. Arcadia acknowledges these other statutes of limitations and even that, traditionally, they apply separately to each party's claims arising out of the same set of facts, even if one party had timely commenced an action.

¶ 17. Nonetheless, Arcadia asserts that unlike most civil actions, where "multiple plaintiffs can sustain different and distinct injuries or losses from the same incident," what sets the annexation statutes apart is that "there is only one potential form of relief—invalidation of the annexation." Even assuming Arcadia is correct with respect to its uniqueness-of-remedy argument, Arcadia does not cite any authority supporting the proposition that, from either a plain-meaning or legislative-intent standpoint, one party's "action" challenging an annexation under WIS. STAT. §§ 66.0217(11)(a) and 893.73(2)(b) permits another party to untimely assert its own claims challenging the annexation. Arcadia likewise provides no authority where such an approach has been undertaken with any other limitations period, including other types of cases wherein multiple parties can seek only one potential form of relief. We decline to impart such a strained meaning on our own initiative.

¶ 18. Next, Arcadia faults the circuit court for failing to address the application of the relation-back doctrine. The doctrine is found in WIS. STAT. § 802.09(3),

which provides that an amendment to a pleading "relates back to the date of the filing of the original pleading" if the claim asserted in the amended pleading "arose out of the transaction, occurrence, or event set forth or attempted to be set forth in the original pleading." Arcadia, however, disclaimed any reliance on the relation-back statute in response to Independence's motion to dismiss, correctly stating "[t]his is not a case of amendment of the pleadings." Given this position, Arcadia should not be surprised the circuit court did not address the relation-back doctrine. Moreover, the general rule is that issues not presented to the circuit court will not be considered for the first time on appeal. *State v. Caban*, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997).[10]

¶ 19. Nonetheless, Arcadia contends relation-back principles are relevant to its argument that the ninety-day statute of limitations was tolled under WIS. STAT. § 893.13(2) and *Aetna*. Subsection 893.13(2) provides:

> A law limiting the time for commencement of an action is tolled by the commencement of the action to enforce the cause of action to which the period of limitation

---

[10] As a result, we do not address further Arcadia's reliance on relation-back cases in the context of amended pleadings, including *Korkow v. General Casualty Company of Wisconsin*, 117 Wis. 2d 187, 344 N.W.2d 108 (1984), in which our supreme court held "that an amended pleading adding a separate claim by a different plaintiff may relate back to the date of filing of the original complaint if the requirements of sec. 802.09(3), Stats. are satisfied and relation back will not cause unfairness or prejudice to the other party." *Id.* at 189–90 (footnote omitted). As emphasized throughout this opinion, based on the language used in all the relevant statutes at issue and existing case law, what matters is that Arcadia's cause of action is an "independent" one.

applies. The law limiting the time for commencement of the action is tolled for the period from the commencement of the action until the final disposition of the action.

Arcadia contends this statute, as interpreted and applied in *Aetna*, renders its claims timely. Arcadia reasons its claims, like those in *Aetna*, "arose from a single cause of action and [involved the same] grouping of facts" as the claims Burnside and Lincoln advanced. *See Aetna*, 191 Wis. 2d at 748. Independence disagrees and argues that, to understand *Aetna*, one needs to understand both the judicial and legislative history concerning intervention vis-à–vis the application of statutes of limitation, beginning with *Heifetz v. Johnson*, 61 Wis. 2d 111, 211 N.W.2d 834 (1973).

¶ 20. In *Heifetz*, the supreme court addressed a situation in which the plaintiff received from his insurer compensation for injuries sustained in an auto accident; the plaintiff then executed a "subrogation receipt and assignment" to the insurer. *Id.* at 113. However, the plaintiff failed to join his insurer in the subsequent lawsuit against the alleged tortfeasors. *Id.* The defendants asserted this constituted a failure to join an indispensable party and, as a result of this failure to properly commence the action, the statute of limitations had run not only as to the insurer's claim, but as to the plaintiff's claim as well. *Id.* While the court agreed that the insurer's claim was untimely, it concluded the injured party's claim could proceed even without the insurer being present in the action; by virtue of its claim being barred, the insurer had effectively been stripped of its "indispensable" status. *Id.* at 115, 123; *see also Bruner v. Kops*, 105 Wis. 2d 614, 623, 314 N.W.2d 892 (Ct. App. 1981). "[T]he insured and the subrogated insurer are not joint own-

817

ers of any part of the claim against the tort-feasor, although an adjudication of the tort-feasor's total liability requires the presence of both of the co-owners of the claim as plaintiffs." *Heifetz*, 61 Wis. 2d at 121.

¶ 21. Following *Heifetz*, the supreme court enacted Wis. Stat. § 803.03(2)(a), which became effective January 1, 1976, and was later approved by the legislature. *See* Wisconsin Rules of Civil Procedure, 67 Wis. 2d at 643–45; 1975 Wis. Laws, ch. 218, §§ 115–19 (making minor amendments to the newly created provisions); *see also Bruner*, 105 Wis. 2d at 624. Under the current version of the statute, a party seeking relief is required to join as parties to the action "all persons who at the commencement of the action have claims based upon subrogation to the rights of the party asserting the principal claim, derivation from the principal claim, or assignment of part of the principal claim." Para. 803.03(2)(a). The converse is also true: any party asserting a claim based upon subrogation, derivation or assignment is required to join the person from whom the party received its rights or claim. *Id.*

¶ 22. *Bruner* held that the new statute wrought a fundamental change in the law, setting the table for the later *Aetna* decision. In *Bruner*, the plaintiff was injured and received compensation from the state, which later assigned its subrogation interest to the plaintiff. *Bruner*, 105 Wis. 2d at 616. However, Bruner failed to join the Wisconsin Department of Justice (DOJ) as a party. *Id.* As in *Heifetz*, the defendant in *Bruner* asserted the action was lacking a necessary party; he further reasoned that because the statute of limitations had run on the DOJ's claim, Bruner's claim was also time barred. *Bruner*, 105 Wis. 2d at 616–17. The *Bruner* court acknowledged that under *Heifetz's*

reasoning, "Bruner's failure to join the [DOJ] would only bar the [DOJ's] claim," while Bruner's claim could go forward. *Bruner*, 105 Wis. 2d at 623.

¶ 23. However, the *Bruner* court determined that the enactment of WIS. STAT. § 803.03(2)(a) superseded *Heifetz* by requiring the joinder of all persons "who at the commencement of the action possess part of the original cause of action by means of subrogation, derivation or assignment." *Bruner*, 105 Wis. 2d at 624. In these instances, there is only one cause of action; rights based in subrogation, derivation or assignment are "parts of the claim in chief," *id.*, and "the entire claim, including all of its constituent parts, is effectively commenced with the filing of one summons by the principal claimant," *id.* (quoting Charles D. Clausen & David P. Lowe, *The New Wisconsin Rules of Civil Procedure: Chapters 801–803,* 59 MARQ. L. REV. 1, 89 (1976)). Accordingly, the court concluded "Bruner[,] by bringing his principal claim[,] tolled the statute of limitations as to the [DOJ's] subrogated claim, and was not barred from bringing this action." *Id.* at 625.

¶ 24. While *Heifetz* and *Bruner* involved attempts to defeat a plaintiff's claim by invoking the lack of an ostensibly necessary party, in *Anderson v. Garber*, 160 Wis. 2d 389, 466 N.W.2d 221 (Ct. App. 1991), two subrogated insurers were incorrectly joined as party defendants rather than party plaintiffs under WIS. STAT. § 803.03(2). *Anderson*, 160 Wis. 2d at 398. Applying *Bruner*, the court concluded the statute of limitations had not run against either subrogee, as the filing of the plaintiff's claim had tolled the running of the statute for them. *See Anderson*, 160 Wis. 2d at 401. However, the court also observed, in a footnote, that

the statute was tolled only as long as the subrogated claims were asserted in the action commenced by the primary claimant:

> While . . . the statute of limitations does not bar joinder of a subrogated claim, we note that filing the principal claim does not "toll" the statute to allow an independent claim by the insurer. The holding of *Bruner* can be seen to authorize the relation back of an insurer's cause of action when joined as a party. *See* sec. 802.09(3), Stats.

*Anderson*, 160 Wis. 2d at 400 n.3.

¶ 25. In this case, Independence correctly summarizes the state of the law following *Anderson*. If the plaintiff was required to join a party holding a "constituent part" of the cause of action under WIS. STAT. § 803.03(2)(a), but failed to do so, then the subrogation, derivative or assigned claims were deemed timely by virtue of the WIS. STAT. § 802.09(3) relation-back doctrine—as long as such claims were asserted in the original action. However, if the plaintiff was not required to join the other party's cause of action under § 803.03(2)(a)—i.e., the other party's claims did not arise by subrogation, derivation or assignment, and therefore were not part of the plaintiff's claim in chief—the other party's claims did not relate back to the date of the original filing and were time-barred.

¶ 26. Contrary to Arcadia's arguments, *Aetna* was merely a straightforward application of the *Anderson* footnote regarding "independent" claims, for which the running of the applicable limitations period is not tolled by WIS. STAT. § 893.13(2). In *Aetna*, two children started a fire that destroyed a building owned by Pine Wood Creek Development. *Aetna*, 191 Wis. 2d at 746. The building was insured by Aetna, which paid Pine Wood's full claim and became subrogated to Pine

Wood's rights. *Id.* When Pine Wood commenced an action against the children and other defendants, it did not name Aetna in the action. *Id.* However, Pine Wood was only seeking "to recover the depreciated market value of the dwelling and lost rents—damages not covered under the Aetna policy." *Id.* Pine Wood settled its claims with the defendants and the action was dismissed. *Id.* Three years later, and more than six years after the fire, Aetna commenced a separate action to recover on its subrogation claim against the same defendants. *Id.* That action was dismissed upon the defendant's motion for summary judgment, which asserted Aetna's claim was time barred by virtue of the six-year statute of limitations. *Id.*

¶ 27. Aetna—similar to Arcadia here—argued the statute of limitations on its claim was tolled by virtue of WIS. STAT. § 893.13(2), because "Pine Wood's claims for relief arose from a single cause of action and a grouping of facts falling into a single occurrence—the fire that destroyed the dwelling." *Aetna*, 191 Wis. 2d at 748. Aetna urged that *Bruner* be read to establish that a subrogated insurer's claim relates back to the filing of a lawsuit by an insured "because all parts of the entire claim arising out of a cause of action were inextricably joined together." *Aetna*, 191 Wis. 2d at 748.

¶ 28. We rejected this reasoning, concluding *Bruner* was "not as broad as it might at first blush seem to be." Aetna's situation was distinguishable from the plaintiff's in *Bruner* because Pine Wood's only claims were for damages it had not recovered from Aetna. *Aetna*, 191 Wis. 2d at 749. Aetna was therefore not an "indispensable party" to Pine Wood's action. *Id.* The solution, we held, was found in the *Anderson* footnote; even though its interest arose in subrogation,

Aetna was attempting to bring an untimely "independent" claim. *Id.* at 749–50. We further concluded Wis. Stat. § 893.13(2) did not apply to the insurer's independent claim; the provision "does nothing more than insure that the joinder of constituent parts of a cause of action, during the pendency of the action, is not frustrated by the application of the appropriate statute of limitations." *Id.* at 752.

¶ 29. *Aetna* thoroughly discussed the *Anderson* and *Bruner* decisions. It ultimately held that the two cases were compatible. *Aetna*, 191 Wis. 2d at 750. According to the *Aetna* court, *Bruner* held that "the commencement of an action by the principal claimant effectively commences an action on all of the constituent parts." *Id.* (citing *Bruner*, 105 Wis. 2d at 624–25).

> From this conclusion it logically follows that the commencement of an action also tolls the running of the statute of limitations on all of the constituent parts. In *Anderson,* we explained that the tolling of the limitations period does not grant a grace period to an insurer to commence an independent claim. We wrote that when read together, *Bruner* and § 802.09(3), Stats., (relation back of amendments to the pleadings) lead to the conclusion that when an insurer is joined as a party its claim relates back to the commencement date of the insured's principal claim. *Anderson,* 160 Wis. 2d at 400 n.3, 466 N.W.2d at 226.

*Aetna*, 191 Wis. 2d at 750–51.

¶ 30. This distinction between a "constituent part of a cause of action" and an "independent cause of action" is critical. *Bruner* held that a " 'constituent part of a cause of action' is present where a person 'possess[es] part of the original cause of action by means of subrogation.' " *Aetna*, 191 Wis. 2d at 751 (quoting *Bruner*, 105 Wis. 2d at 624). This statement is

somewhat incomplete, as WIS. STAT. § 803.03(2)(a) informs us that claims arising by derivation and assignment are also "constituent parts" of a cause of action.

¶ 31. The fundamental flaw in Arcadia's argument is that its claims challenging the validity of the annexation are not a "constituent part" of either Burnside's or Lincoln's respective claims challenging the annexation. No part of Arcadia's claims here arose by means of subrogation, derivation or assignment. Although its claims may be, in some respects, "identical" to those brought by Burnside and Lincoln, that alone is insufficient to render *Arcadia's* claims timely. *See Aetna*, 191 Wis. 2d at 751 ("To be a constituent part, Aetna's claim must be a constituent part of Pine Wood's 'original cause of action,' not just part of the occurrence that caused Pine Wood's injury.").

¶ 32. Arcadia essentially ignores that there were three ordinances passed—one for each town affected—and, more importantly, ignores that each affected town has its own interests to protect relative to the attempted annexation. To perhaps best illustrate the illogic of Arcadia's position, one needs only to recognize that, had Arcadia timely joined this action, and had Burnside and Lincoln still both agreed to resolve their claims by settlement with Independence, Arcadia's own right to contest the validity of the annexation would have still existed. Arcadia's causes of action were therefore "independent" of those of the other municipalities.

¶ 33. Arcadia emphasizes that, unlike the insurer in *Aetna*, it did not bring an independent *action* to enforce its claims, but rather asserted those claims through intervention. In support of this argument, Arcadia seizes on a single paragraph in the *Aetna*

opinion to argue its claims were timely filed.[11] Based on this paragraph, Arcadia asserts the *Aetna* court foreshadowed the present situation and made statements suggesting "Aetna's claims *would have* been deemed timely if, instead of commencing a subsequent action, it had *intervened* in the Pine Wood action while it was still pending, even if after the expiration of the statute of limitations."

¶ 34. The distinction between Arcadia's status as an intervenor and the *Aetna* insurer's status as an independent claimaint is unhelpful to Arcadia because, either way, Arcadia does not hold a "constituent part" of Burnside's or Lincoln's claims. By contrast, the insurer in *Aetna did* possess a "constituent part" of Pine Wood's cause of action, but Pine Wood had never commenced an action involving Aetna's subrogated interest. The pertinent observation in *Aetna*—that even a person possessing a "constituent part" under Wis. Stat. § 803.03(2)(a) of another's claim does not benefit from the relation-back doctrine if the "constituent part" is brought "independently" (i.e., in a different action) from the original claim—was simply a reflec-

---

[11] The full text of that paragraph is as follows:

The operation of this rule can best be demonstrated with the events in this case. The fire giving rise to the cause of action occurred on June 17, 1987; therefore, the six-year statute of limitations expired on June 17, 1993. Pine Wood commenced its action on January 21, 1988, well within the period of limitations. If, for the purpose of this example, Pine Wood's action was still pending on July 15, 1993 (the date Aetna commenced action on its subrogated claim) and Aetna moved to intervene on that date, its subrogated interest would relate back to the day Pine Wood commenced its action and Aetna would have the benefit of the limitations period *not* having expired.

*Aetna Cas. & Sur. Co. v. Owen,* 191 Wis. 2d 744, 752, 530 N.W.2d 51 (Ct. App. 1995).

tion of the facts in that case. It does not support Arcadia's argument that its independent claims were timely merely because of its status as an intervenor. Because Arcadia did not possess a "constituent part" of either Burnside's or Lincoln's claims, it does not matter that the substance of Arcadia's claims was identical to the substance of the claims advanced by Burnside and Lincoln—or whether Arcadia attempted to enforce its separate claims through intervention or an "independent" action.

¶ 35. The forgoing conclusion is evident from the very passage in *Aetna* that Arcadia emphasizes. Before turning to the language in that passage, we must consider its context. Immediately preceding the paragraph on which Arcadia relies, the *Aetna* court discussed WIS. STAT. § 803.03(2)(a)'s purpose. Paragraph 803.03(2)(a) was designed to eliminate confusion arising from the intersection of the statute of limitations with the rules governing joinder of parties. *Aetna*, 191 Wis. 2d at 751 (citing Clausen, *supra* ¶ 23, at 89).

> The elimination of confusion happens because if an insurer with a subrogated interest joins a pending action at any time, the subrogated interest relates back to the date of commencement of the action. If the limitation period has not lapsed on the day the action was commenced, it will be considered not to have lapsed as to the subrogated constituent interest even if the insurer joins the pending action outside of the limitations period.

*Id.* at 751–52.

¶ 36. Following this explanation of WIS. STAT. § 803.03(2)(a), the *Aetna* court stated the "operation of *this rule* can best be demonstrated with the events in this case." *Aetna*, 191 Wis. 2d at 752 (emphasis added).

825

The "rule" to which the *Aetna* court was referring was the court's previous articulation of how § 803.03(2)(a) and the relation-back doctrine operate to toll the statute of limitations on a subrogation (or other "constituent") claim. Accordingly, the court recognized that if Pine Wood's action had been pending on July 15, 1993 (the date Aetna commenced the action on its subrogated claim), Aetna could have sought to intervene in that action and its subrogated interest would have related back to the date Pine Wood commenced its action. *Id.* This would have rendered Aetna's subrogation claim timely. *Id.* However, *Aetna* does not establish that whenever a person intervenes in a pending lawsuit, asserting claims identical to, although not constituent of, those of the original parties, the intervenor receives the benefit of tolling under Wis. Stat. § 893.13(2). Only a person having one of the three "constituent parts" of an original, timely cause of action under § 803.03(2)(a) (i.e. subrogation, derivation or assignment) may successfully intervene in a pending action without regard to the statute of limitations. Arcadia lacks any such interest here.

¶ 37. Moreover, *Barnes* clearly demonstrates that Arcadia's reliance on Wis. Stat. § 893.13(2) is misplaced. In that case, after the statute of limitations had run, the plaintiff, a hotel shooting victim, filed an amended complaint that added as new plaintiffs two other victims of the shooting. *Barnes*, 318 Wis. 2d 537, ¶ 4. We concluded that § 893.13(2) tolled the running of the statute of limitations as to the original plaintiff's timely cause of action, but the statute "cannot be interpreted to protect others who failed to timely file a claim and simply want to avoid application of the statute of limitations by piggy-backing on the complaint of someone who timely asserted their rights."

826

*Barnes*, 318 Wis. 2d 537, ¶¶ 24–25. An interpretation of § 893.13(2) that permits one person's timely lawsuit to toll the statute of limitations as to the independent claims of any other person arising from the same facts or event "would lead to absurd results and render meaningless the statute of limitations in multiple-victim cases." *Barnes*, 318 Wis. 2d 537, ¶ 25.

██

¶ 38. In holding that Arcadia's claims are time-barred, we are mindful that, in Wisconsin, defendants have a constitutional right to rely upon statutes of limitations to limit the claims against them. *Westphal v. E.I. du Pont de Nemours & Co.*, 192 Wis. 2d 347, 373, 531 N.W.2d 386 (Ct. App. 1995); *see also* WIS. STAT. § 893.05 ("When the period within which an action may be commenced on a Wisconsin cause of action has expired, the right is extinguished as well as the remedy."). "The longer we extend that period, the more the right is abridged." *Westphal*, 192 Wis. 2d at 373. In this light particularly, Arcadia's position—i.e., that it receives the benefit of tolling and/or relation back simply by intervening in the action and asserting the same claims and facts as the original parties—is absurd. *See Barnes*, 318 Wis. 2d 537, ¶ 25; *see also State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110 (statutory language is interpreted reasonably, to avoid absurd or unreasonable results).

██

¶ 39. Arcadia's arguments regarding the identity of the claims in this case closely track its allegation that the three annexation ordinances were "in effect, one ordinance." Independence denied that allegation from Arcadia's complaint, but, more importantly, the allegation is itself only a conclusion regarding the legal

effect of the annexation ordinances. Legal conclusions pleaded in a complaint are not accepted and are insufficient to withstand a motion to dismiss. *Data Key Partners v. Permira Advisers, LLC*, 2014 WI 86, ¶ 18, 356 Wis. 2d 665, 849 N.W.2d 693.

¶ 40. It is undisputed Independence passed three annexation ordinances, only one of which pertained to Arcadia. If Arcadia believed the ordinance pertaining to the annexation of its territory was invalid, it had a powerful incentive to join the Burnside/Lincoln litigation in a timely fashion. Yet it did not do so, perhaps under the belief that it could rely upon Burnside and Lincoln to effectively litigate its position in absentia.[12] Even if that was not Arcadia's belief or reasoning here, acceding to Arcadia's argument would effectively approve such a "piggy-backing" approach for all similarly situated parties in the future. To the extent the Burnside/Lincoln challenge implicated the validity of the annexation ordinance pertaining to Arcadia's territory, the better practice would have been to bring Arcadia into the litigation immediately.[13] This is where any judicial efficiency principles Arcadia raises come into play. However, Burnside and Lincoln were not

---

[12] Arcadia contends it spent significant time gathering public input on the annexation through public hearings and other means, as well as evaluating the merit of a potential legal challenge. These efforts do not absolve Arcadia of its failure to join the action within the applicable limitations period.

[13] Arcadia also emphasizes that Independence, in its answer to the Burnside/Lincoln complaint, challenged the standing of those municipalities given that the alleged defect in contiguity was located within the territory of Arcadia. Independence's standing allegation is, however, irrelevant to the question of whether the statute of limitations has run on Arcadia's claims.

required to do so. And, as already explained, Arcadia's claim is not a "constituent part" of Burnside and Lincoln's causes of action under WIS. STAT. § 803.03(2)(a) such that the statute of limitations was tolled as to Arcadia's claims by Burnside and Lincoln's timely action.

¶ 41. We also reject Arcadia's reliance on *Strong v. C.I.R., Inc.*, 179 Wis. 2d 440, 507 N.W.2d 159 (Ct. App. 1993), *rev'd in part,* 184 Wis. 2d 619, 516 N.W.2d 719 (1994). In that case, the plaintiffs, two C.I.R. employees, brought a prevailing wage action against the prime contractor on a municipal works project and its surety. *Id.* at 443–44. The plaintiffs claimed the action was brought on behalf of all other similarly situated C.I.R. employees. *Id.* at 446. Other C.I.R. employees were joined by written consent more than one year after the contract was completed, and the defendants raised WIS. STAT. § 779.14(2)(a) (1989–90), as a defense, asserting the claims of these employees were untimely. *Id.* at 443, 446–47.

¶ 42. Although the court of appeals decision in *Strong* discussed certain principles relating to the amendment of pleadings and joinder—though none that clearly help Arcadia here—more important is that the supreme court granted a petition for review and decided the employees' claims were timely for a different reason. *See Strong v. C.I.R., Inc.*, 184 Wis. 2d 619, 632, 516 N.W.2d 719 (1994). Namely, the court held that there was "no necessity to employ the doctrine of relation back to amend the pleadings or to join the parties" because the relevant statutes, which specifically related to the obligations toward laborers hired to work on public works projects, established that other employees with claims may be joined by consent at any time prior to trial. *Id.*

¶ 43. Arcadia argues *Strong* controls here because the annexation statutes contain a unique provision analogous to the relevant statutory provisions at issue in *Strong*. The statute Arcadia relies on is WIS. STAT. § 66.0233, which states:

> In a proceeding in which territory may be attached to or detached from a town, the town is an interested party, and the town board may institute, maintain or defend an action brought to test the validity of the proceedings, and may intervene or be impleaded in the action.

On its face, this statute does not limit or otherwise render inoperative the timeliness provisions of WIS. STAT. § 66.0217(11). And since Arcadia does not explain why the statute's silence on the matter should be read to permit Arcadia's untimely intervention in the present lawsuit, we deem this argument undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶ 44. Finally, Arcadia argues it should be "treated as if it was an original party to the action" simply because it is an intervening party. "Intervention is a procedure by which an outsider with an interest in a lawsuit may participate in the suit as a party, although the intervenor was not named as a party by the existing litigants." *Kohler Co. v. Sogen Int'l Fund, Inc.*, 2000 WI App 60, ¶ 7, 233 Wis. 2d 592, 608 N.W.2d 746 (quoting 3 JAY E. GRENIG & WALTER L. HARVEY, WISCONSIN PRACTICE § 309.1 (2d ed. 1994)). Arcadia relies on *Kohler*'s statement that "[w]hen a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party." *Id.*,

¶ 12 (quoting *Schneider v. Dumbarton Developers, Inc.*, 767 F.2d 1007, 1017 (D.C. Cir. 1985)). This rule actually produces the opposite result as Arcadia desires, as we recognized in *Kohler* that the defendant could "pursue any legal claims and defenses" it had against the intervenor. *See id.*, ¶ 11. Arcadia's argument regarding its intervenor status appears to be just a variation of its earlier arguments, which we have rejected. Indeed, Arcadia concedes that if it has "its own distinct claims" that are not saved either by tolling or the relation-back doctrine, its claims are "still subject to timeliness defenses."

¶ 45. In sum, Arcadia has not presented any compelling argument as to why the ninety-day statute of limitations contained within Wis. Stat. §§ 66.0217(11)(a) and 893.73(2) should not bar Arcadia's claims in this case. Those statutes plainly apply, and Arcadia's claims are not saved by the relation-back doctrine, tolling, or its status as an intervenor.

*By the Court.*—Order affirmed.